LOUIS P. REEDER, Appellant, v. ROBERT T. SMITH, Defendant, Impleaded with WILLIAM W. FERGUSON, Respondent.

First Department, July 3, 1919.

Contract — contract to procure horses at specified price — liability of assignees of said contract for failure to perform — measure of damages.

Where one who had contracted to deliver a certain number of horses at a fixed price per head, to be paid for after inspection and acceptance, assigned said contract, reserving unto himself the right to collect direct from the purchasers a certain portion of the price per horse, if and when payable under the agreement, and the assignees in consideration of the remaining sum per horse " if and when payable by the purchasers under the said agreement," agreed to assume and carry out said contract but wholly failed and refused to perform the same, the assignor was still bound during the period specified in the contract to obtain the horses and deliver them to the purchasers, and any sum he was obliged to pay above the price per head at which the assignees had contracted to deliver the horses constituted the measure of damages in an action against them for breach of contract. The damage is not necessarily restricted to the sum reserved to be paid to the assignor.

APPEAL by the plaintiff, Louis P. Reeder, from a judgment of the Supreme Court in favor of the respondent, entered in the office of the clerk of the county of New York on the 19th day of November, 1917, upon a dismissal of the complaint as to the respondent by direction of the court at the close of the case, and also from an order entered in said clerk's office on the same day granting respondent's motion to set aside a verdict in the sum of $40,000, theretofore directed in plaintiff's favor against him and directing judgment in favor of the respondent.

*Martin W. Littleton* of counsel [*Owen N. Brown* with him on the brief], for the appellant.

*Martin Conboy* of counsel [*Griggs, Baldwin & Baldwin*, attorneys], for the respondent.

MERRELL, J.:

This action is brought by the plaintiff upon an assigned claim to recover of the defendants the sum of $40,000 alleged

damages for breach of a contract to deliver 5,000 horses. The horses were for use of the French government and were to be delivered at an Atlantic seaport, subject to inspection by the French government. The original contract was between plaintiff's assignor, one Anderson T. Herd, and the firm of Mayer & Carpenter, a copartnership, of Nashville, Tenn. By said contract, which was entered into on January 11, 1915, Herd agreed to deliver to Mayer & Carpenter the 5,000 horses at a purchase price of $161 per horse. Deliveries of said horses were to be made at Newport News or some other Atlantic seaport, to be designated by the purchasers, during the months of February, March and April of 1915, and the purchase price of $161 per head was to be paid by Mayer & Carpenter to Herd as soon as the horses were inspected and accepted by duly appointed agents of the French government and certified as to fit condition for shipment by the Bureau of Animal Industry of the United States government. The same day Herd, in consideration of the mutual covenants contained in a written instrument of assignment that day executed by the parties thereto, assigned unto the defendants, comprising the firm of Robert Smith & Son, a copartnership, of Portland, Ore., all his right, title and interest in, to and under said contract with Mayer & Carpenter, reserving unto himself, however, the right to collect direct from said Mayer & Carpenter the sum of $8 per horse out of each $161 per horse, if. and when payable under said agreement. In consideration thereof and in consideration of the remaining sum of $153 per horse out of each $161 per horse, if and when payable by said Mayer & Carpenter under said agreement, the said defendants Robert Smith. & Son agreed to assume and carry out all of the covenants and obligations on the part of Herd to be kept and performed under said agreement with Mayer & Carpenter. The defendants further agreed to deliver to said Herd security for the faithful performance of their part of the agreement. The defendants failed to perform their contract. On January thirtieth they notified Herd that they would not perform the same, and shortly thereafter and on February 10, 1915, Herd assigned his alleged claim against the defendants to the plaintiff. The day following plaintiff brought this action for breach of contract. Upon the trial no

proof or claim of damage was made, except the loss of the prospective profit of $8 per horse on the 5,000 horses, aggregating $40,000. At the close of the evidence motions were made by both parties for the direction of a verdict. The court directed a verdict in favor of the plaintiff for $40,000 and costs, but held in abeyance defendants' motion for a verdict in their favor, and subsequently, pursuant to section 1185 of the Code of Civil Procedure, granted a motion made by the defendants to set aside the verdict and dismissed the complaint, with costs. Upon such dismissal judgment was entered, from which the plaintiff brings this appeal.

I think such final disposition of the matter was entirely proper.

It was the contention of the plaintiff upon the trial and it is his position upon this appeal, that the damages of his assignor by reason of defendants' breach of contract were measured by the loss of prospective profits which Herd would have gained had the defendants performed their agreement and delivered the 5,000 horses as they had agreed. On the other hand, the learned trial court was of the opinion that, defendants having defaulted in fulfilling the contract into which Herd had entered with Mayer & Carpenter, and which they had assumed, it was then Herd's duty to minimize the damage as much as possible, and that he would only be entitled to recover of the defendants the damage which he actually sustained as the result of defendants' failure to carry out the same. Of course, when the defendants threw up their contract and refused to perform, such breach on defendants' part in nowise relieved Herd, and the burden still rested upon him to perform his contract with the purchasers of the horses. Herd, however, made no attempt to perform, but at once assigned his claim for damage against the defendants to the plaintiff. It seems to me that the plaintiff was clearly wrong in his theory of damages. The contract between Herd and the defendants was merely one whereby Herd assigned to the defendants his agreement with Mayer & Carpenter for the delivery of the 5,000 horses at the agreed price, reserving to himself the right to collect from Mayer & Carpenter, the purchasers of the horses, $8 per head for the 5,000 horses, and, in consideration of the right to demand $153 per horse out of each $161 per horse, " if and

when payable by the purchasers under the said agreement," the defendants agreed to " assume and carry out all of the covenants and obligations on the part of said Herd to be kept and performed under the aforesaid agreement," which was for the delivery of the 5,000 horses to Mayer & Carpenter. They broke their agreement and refused to perform the same and refused to deliver the 5,000 head of horses at $153 per head. Thereupon it still remained the duty, during the three months in which the contract was to be performed, for Herd to obtain the horses and deliver them to the purchasers in accordance with his contract, and any sum he was obliged to pay above the $153 per head at which the defendants had contracted to deliver the horses to the purchasers constituted Herd's damage against the defendants. I do not agree with the learned counsel for the respondent that Herd's damage would necessarily have been restricted to $8 per head. If he had been compelled to pay a sum greater than $161 per horse, then he would have suffered still greater damage by reason of defendants' breach. He might have been compelled to pay $200 a head for the horses to fulfill his contract with the purchasers and which the defendants had agreed to carry out at $153 a head. In such case his damage would be the excess price which he would be required to pay over that for which the defendants had contracted, amounting to $47 per head. If, in fulfilling his contract with Mayer & Carpenter, Herd had been able to obtain the horses at $153 per head or less, then he would have suffered no damages by reason of defendants' failure to perform the contract. In effect, the defendants, under the assignment of the contract to them and the agreement to carry out the same, obligated themselves to Herd to furnish the 5,000 horses for which Herd had contracted, at $153 per head. Failing to perform such agreement on their part, they should be charged with the excess expense over $153 per head which Herd was compelled to pay as damages suffered by him in fulfilling his contract with the purchasers. Plaintiff has apparently proceeded, and now asks for the reversal of the judgment dismissing the complaint, upon the theory that there was some obligation on defendants' part to pay Herd $8 per head for the horses furnished under the contract. There was no such obligation on defendants' part. The $8

per head was never to pass through the defendants' hands. To that extent Herd retained his claim against the purchasers, Mayer & Carpenter. He reserved to himself the right to collect that sum from said purchasers for each horse, and only assigned to the defendants the right to collect $153 per head of the agreed purchase price of said horses. So far as the evidence shows, Mayer & Carpenter were never known to the defendants. The transaction, so far as the purchasers was concerned, was between themselves and Herd, and they remained obligated to Herd to pay the full purchase price of $161 per head upon delivery of the horses. Herd subsequently assigned to defendants the privilege of performing the contract and of receiving of said purchase price $153 per head, but retained to himself personally the right to collect from the purchasers the balance of said purchase price. Until the horses were delivered to the purchasers under the original contract there was no basis for any claim on Herd's part, either for the $8 per horse which he reserved to himself on performance by defendants, or for whatever damage he might have suffered as the result of defendants' failure to assume and carry out the contract. Full performance of the original contract could alone determine what, if any, damages were suffered by Herd as the result of defendants' default.

Therefore, it seems to me entirely clear that as the result of the assignees' failure to keep and perform the agreement and to assume and carry out in all respects the covenants and obligations of Herd on said contract, Herd's damages were measured by any sum which he was obliged to pay above $153 per horse in obtaining and delivering said 5,000 horses to the purchasers.

The judgment appealed from should be affirmed, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concurred.

Judgment and order affirmed, with costs.